UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| FERNANDO RODRIGUEZ, | Case No.: 3:24-cv-00218-MMD-CSD |
| Plaintiff | **Order and Report & Recommendation of United States Magistrate Judge** |
| v. | Re: ECF Nos. 9, 49, 56 |
| JOHN KEAST, et al., | |
| Defendants | |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

For the reasons set forth below, the court withdraws its order denying Plaintiff's request for reconsideration of the denial without prejudice of his request for injunctive relief; grants the motion for reconsideration; and recommends that Plaintiff's request for injunctive relief be granted insofar as Plaintiff should receive right eye cataract surgery and the recommended dental extractions within 45 days of any order adopting this Report and Recommendation, as well as any necessary follow up care.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (First Am. Compl., ECF No. 12.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

The court screened Plaintiff's First Amended Complaint (FAC), and allowed him to proceed with Eighth Amendment deliberate indifference to serious medical needs claims: (1)

against John Keast, Joseph Benson, Issacson (identified by the Attorney General's Office as Jessica Rambur)¹, Christy Coss, and Kenneth Williams related to the alleged failure to provide him with recommended cataract surgery and now he is blind in both eyes; and (2) against Keast, Rambur, Coss, and Does 5, 6, and 7 (when he learns their identities) related to the failure to schedule a required stress test and completion of the necessary extractions of numerous teeth. (ECF No. 11.)

Plaintiff filed an emergency motion for injunctive relief seeking an order to provide him with cataract surgery in both eyes to restore his sight, and to provide him with oral surgery to remove rotten teeth in his mouth and give him dentures for the missing teeth. (ECF No. 9.)

The court held a hearing on the motion for injunctive relief and required Defendants to provide status updates regarding Plaintiff's cataract surgery and cardiac evaluation relative to his recommended dental extractions. As of the time the court issued its initial report and recommendation on the motion for injunctive relief, the status update reflected that Plaintiff had been scheduled for cataract surgery as well as a cardiology consultation to evaluate his ability to withstand local or general anesthesia for his dental extractions. (ECF No. 42.)

As such, the court issued a report and recommendation on November 18, 2024, that Plaintiff's motion for injunctive relief be denied without prejudice. (ECF No. 45.) The report and recommendation detailed Plaintiff's medical history with respect to these two issues.

Plaintiff had been diagnosed with visually significant cataracts and referred to an ophthalmologist, Dr. Wolff, "ASAP" for cataract surgery as far back as October 10, 2022. Despite being advised that he was scheduled for surgery on September 14, 2023, after he was assessed as being essentially blind and a fall risk, he still did not have the recommended surgery.

---

¹ Rambur's maiden name was Issacson. (*See* ECF No. 33.)

His vision continued to deteriorate. As was noted in the report and recommendation, it took Plaintiff filing a lawsuit (in May 2024), and the court holding a hearing on his motion for injunctive relief (in September 2024) (requiring the appearance of the Chief Deputy Attorney General and NDOC's Medical Director) to have any further action taken. Even after the hearing, while Plaintiff had follow-up appointments, the cataract surgery was still not scheduled. The court had to require another status update, where it was disclosed Plaintiff was scheduled for cataract surgery in the near future, and the court required a status update in 45 days regarding the outcome of the surgery. (*See* ECF No. 45 at 6-9.) Given the representations made by Defendants that Plaintiff was scheduled for cataract surgery, it was recommended that Plaintiff's motion for injunctive relief be denied as to the cataract issue.

The court also recounted that it was documented that Plaintiff needed dental extractions of various teeth as far back as April 2021, and he was referred to an oral surgeon in September 2021. As of March 2023, nothing had happened, and Plaintiff continued to request extractions, only to be told he was on the list. He was referred to an oral surgeon for the extractions again in April 2023, which was approved with a notation he was scheduled for October 2023. Plaintiff continued to experience pain due to his rotting teeth. He saw Dr. Dryden on October 19, 2023, who noted Plaintiff needed extraction of various teeth, but that he required cardiac clearance before undergoing the extractions. Dr. Dryden requested cardiac clearance days later. He was seen by cardiology at the end of October 2023, who recommended a nuclear stress test and echocardiogram. This was requested, and authorized soon thereafter, with a notation that it was scheduled for July 30, 2024, some eight months after it was authorized.

As of February 2024, it still had not occurred. Plaintiff did not have the required testing as of the time the court held its hearing on Plaintiff's motion in September 2024. Defendants

confirmed that the tests had been ordered, but an appointment still had not been scheduled, though they represented it was scheduled to take place within 30 days. Based on this representation, the court recommended that Plaintiff's request for injunctive relief be denied, with an instruction that Defendants provide a further status update. (ECF No. 45 at 10-12.) The court noted that if Defendants did not promptly follow through with the cardiac evaluation and subsequent dental extractions (assuming he receives cardiac clearance), Plaintiff could renew his motion for injunctive relief with respect to his dental extractions. (*Id*. at 13.)

District Judge Du adopted the report and recommendation in full on December 9, 2024. (ECF No. 46.)

Defendants filed a status update on January 2, 2025, stating that Plaintiff received eye surgery on December 11, 2024, and was scheduled to receive follow up care at Sierra Nevada Eye. In addition, on November 20, 2024, Plaintiff received cardiac clearance to have the dental extractions and Defendants were in the process of scheduling an appointment with Dr. Dryden. (ECF No. 47.)

Plaintiff filed a response to the status update noting that he only had cataract surgery on one eye (the left eye), but not the right eye. He had not been told yet when he would have surgery on the right eye. (ECF No. 48.)

On February 6, 2025, Plaintiff filed a motion for reconsideration of the order denying the motion for injunctive relief without prejudice. He noted he still had not received the eye surgery on the right eye, nor the dental extractions. (ECF No. 49.) District Judge Du referred this motion to the undersigned. (ECF No. 51.)

Defendants filed a response to the motion for reconsideration on March 3, 2025. They did not dispute that Plaintiff had not yet received the care sought in the underlying motion for

injunctive relief, but Defendants represented that NDOC had approved the procedures and was waiting for scheduling by outside providers. (ECF No. 53.)

The undersigned held a hearing on March 6, 2025. Based on Defendants' representations that the dental extractions were approved and scheduled, and that they were receiving weekly updates on availability for the right eye surgery to be scheduled, the motion for reconsideration was denied. A further status update was required. (ECF No. 56.)

Defendants filed a status update on March 14, 2025, stating that Plaintiff was administratively approved for further care for the right eye and they were waiting for an opening in the schedule of the outside provider, and was scheduled for an appointment as of March 10, 2025, that was to take place within 30 days. The status update contained no information regarding the dental extractions. (ECF No. 57.)

On April 17, 2025, Plaintiff filed a status update advising the court that a correctional officer asked him on March 24, 2025, why Plaintiff had not gone to medical for 6:30 a.m. transport, but Plaintiff had never been informed of the transport. In addition, his dental extractions still had not taken place. (ECF No. 58.)

Pursuant to the court's order, Defendants filed another status update on May 27, 2025, stating again that Plaintiff had been "administratively approved" for further care to his right eye, noting that Plaintiff had been scheduled for March 24, 2025, but Plaintiff and his escorts arrived late to the appointment, and the provider was unable to complete the scheduled care. They did not address Plaintiff's claim that he was never advised of the transport. They also state that rescheduling was approved by NDOC, but as of that time no appointment had been scheduled. Plaintiff had been placed on NDOC's schedule to see Dr. Dryden (for the extractions) on March 27, 2025. However, there was a scheduling error as Plaintiff had in fact been scheduled to see

Dr. Dryden on an earlier date and his appointment was missed. They represented the appointment was rescheduled to take place within 45 days. (ECF No. 62.)

Plaintiff filed a notice on June 4, 2025, that his left eye (which had been treated with cataract surgery) had degenerated due to diabetic neuropathy, and since he also cannot use his right eye, he is blind. He asked that another inmate be allowed to assist him at the June 9, 2025, status conference, and that request was approved. (ECF Nos. 64, 65.)

The court held a status conference on June 9, 2025, and expressed its frustration regarding the status of Plaintiff's procedures. Counsel for Defendants advised that both the cataract surgery and the dental appointments were rescheduled. (ECF No. 66.)

On June 17, 2025, Plaintiff filed a notice stating that on June 12, he was given no notification (again) that he was to report to medical (or that he should stop eating or drinking or taking medications). A correctional officer once again told him, too late, that he was to report to medical for transport, but he was late, and the appointment was cancelled. (ECF No. 67.)

On July 2, 2025, Defendants filed a status update. They state that "upon information and belief," Plaintiff was in the hospital from June 16, 2025, through June 23, 2025, and as such, he missed his rescheduled appointment with "Dr. Wolff and/or Dr. Dryden." Since his return, medical staff have been attempting to reschedule his appointments, to no avail. They go on to advise the court that "upon information and belief, Dr. Dryden is no longer taking offender patients," and "it is uncertain at this time whether Dr. Wolff will continue to see offenders," but they are "supposed to receive an answer from Dr. Wolff's office regarding rescheduling of Plaintiff and whether Dr. Wolff will continue seeing offender patients in the future, within the next week or so." (ECF No. 70.)

Plaintiff was recommended for cataract surgery as far back as October 2022, and he still has not had cataract surgery for both eyes. Extractions of numerous teeth were recommended as far back as April 2021, and those extractions still have not been performed. It has been over a year since this lawsuit was filed, and nearly a year since the motion for injunctive relief was filed. Defendants have continually made representations to the Plaintiff and this court that the recommended procedures would occur. However, Plaintiff still has not had the right eye cataract surgery or the dental extractions.

Defendants do not dispute Plaintiff suffers from serious medical needs: cataracts in the right eye and the need for multiple dental extractions. Nor can Defendants dispute that there has been a *significant*, *years long* delay in performing these procedures. Defendants now attempt to blame the lack of necessary treatment on outside providers no longer taking offender patients, but even if that is true, the procedures could have been performed by these providers long ago. It is not Plaintiff's fault that on two occasions he was not told that he would need to report to medical for transport to see Dr. Wolff for his right eye cataract surgery, only for the appointments to be cancelled. Nor is it Plaintiff's fault that Defendants failed to timely schedule him for the dental extractions with Dr. Dryden. If these providers are no longer taking inmate patients, it is incumbent upon NDOC officials to expediently find providers who will, even if that means transporting him, temporarily, to a facility in southern Nevada, where a provider may be able to accommodate these procedures. The court will no longer accept Defendants' representations that the procedures are scheduled, because to date, those statements ring hollow as neither surgery has taken place.

As such, the court withdraws its prior order denying Plaintiff's request for reconsideration of the order denying his motion for injunctive relief without prejudice; grants the

request for reconsideration; and recommends that injunctive relief be granted. District Judge Du should require Defendants to have Plaintiff undergo the right eye cataract surgery and dental extractions within, at most, 45 days of any order adopting this report and recommendation.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted).

The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).). The Ninth Circuit has held that "serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can

support the issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011) (citation and quotation marks omitted).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, the PLRA limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a) therefore operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators—no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

### III. DISCUSSION

The court has already concluded that Plaintiff has demonstrated a likelihood of success on the merits of his Eighth Amendment claims. The events that have transpired (or more accurately, have failed to transpire) since the report and recommendation was issued serve to reinforce that conclusion. The delay in providing Plaintiff with recommended medical and dental treatment persists to this day.

Plaintiff has not only demonstrated that he is likely to suffer irreparable harm in the absence of preliminary relief, but that he *is* suffering irreparable harm. He is now essentially blind and his records long ago established he is a fall risk, and he has continued to complain about rotting and painful teeth.

Defendants have not raised a serious question as to whether the balance of equities tip in Plaintiff's favor or that injunctive relief is in the public interest. Plaintiff has been suffering for *years* from these maladies, only to have his concerns put off in perpetuity.

Therefore, it is recommended that the District Judge enter an order requiring Defendants to provide Plaintiff with right eye cataract surgery as well as the recommended dental extractions within, at a minimum, 45 days of any order adopting this Report and Recommendation. The order should also require that they provide any recommended follow up care within a reasonable time.

### IV. ORDER

The court **WITHDRAWS** its prior order denying reconsideration of the order denying Plaintiff's motion for reconsideration without prejudice. (ECF No. 56.) The motion for reconsideration (ECF No. 49) is **GRANTED**.

### V. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Plaintiff's motion for injunctive relief (ECF No. 9) insofar as it is recommended that the District Judge order that Plaintiff receive right eye cataract surgery as well as the recommended dental extractions within, at a minimum, 45 days of any order adopting this Report and Recommendation. The order should also require that Defendants provide any recommended

follow up care within a reasonable time. Finally, Defendants should be required to file a status update within 14 days after the recommended care is provided.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: July 8, 2025

_____
Craig S. Denney
United States Magistrate Judge